**In re Calvin William COLE, dba Harris Tire Service, dba Harris Tire Service, Inc., dba Pro Tire, Debtor.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Calvin COLE, Defendant-Debtor.**

**Bankruptcy No. 580–1556.
Adv. No. 581–0598.**

United States Bankruptcy Court,
N. D. Ohio.

May 24, 1982.

David Seaman, U. S. Dept. of Justice, Washington, D. C., Richard J. French, Asst. U. S. Atty., Cleveland, Ohio, Glenn G. Yanik, Washington, D. C., for plaintiff.

Michael J. Moran, Cuyahoga Falls, Ohio, for debtor.

## FINDING AS TO DISCHARGEABILITY

### H. F. WHITE, Bankruptcy Judge.

This action is one filed by Plaintiff, United States of America, against Defendant-Debtor, Calvin Cole, wherein Plaintiff seeks to have it determined that a judgment debt owed by Defendant to Plaintiff is nondischargeable in bankruptcy. Plaintiff relies upon 11 U.S.C. Sections 523(a)(2) and 523(a)(6) for its argument of nondischargeability.

Plaintiff has filed a motion for Summary Judgment on that part of its complaint alleging that the debt is nondischargeable pursuant to 11 U.S.C. Section 523(a)(6). Both parties have submitted briefs and affidavits on the motion. At the request of this Court at the hearing upon Plaintiff's Motion for Summary Judgment, both parties submitted further briefs discussing the application of *Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981) to the instant case.

### FINDING OF FACT

1. Plaintiff, United States of America, and Virginia International Testing Laboratories, Incorporated (hereinafter referred to as "VITL") were parties to a contract whereby VITL agreed to test tires. Defendant-Debtor, Calvin Cole, (hereinafter referred to as "debtor") was President of said company.

2. VITL assigned to First National Bank and Trust Company of Western Maryland its rights to all monies due under the contract.

3. General Services Administration erroneously issued a check dated September 20, 1974 in the amount of $69,894.08 to VITL for payment under the contract. GSA discovered its error and inquired of Debtor as to whether VITL had received the check.

4. On or about October 24, 1974, debtor, as president of VITL, endorsed and deposited the check in a VITL bank account. VITL wrote several checks and made withdrawals on the GSA check so that the funds were totally disbursed within several days after the deposit. The check was paid out by GSA upon deposit by debtor.

5. Due to the assignment by VITL to First National Bank and Trust Company of Western Maryland and federal law dealing with such assignments, GSA was required to issue a second check in the amount of $69,894.08 to the Bank. GSA has never recovered any of the monies received by VITL due to the erroneously issued check.

6. Debtor was indicted by a federal grand jury on three charges based on his endorsement and deposit of the check in question. Debtor was tried by a jury in the United States District Court for the Eastern District of Virginia on two of the violations—the first brought pursuant to 18 U.S.C. Section 641 and the second, pursuant to 18 U.S.C. Section 287. Debtor was convicted of a violation of 18 U.S.C. Section 641.

7. Plaintiff, United States of America, commenced a civil action in the United States District Court for the Eastern District of Virginia for the recovery of the monies in question. The complaint therein alleged that the acts of endorsement and deposit of the check were a conversion of funds. It was further alleged that debtor had been unjustly enriched and that the acts were in violation of the False Claims Act, 31 U.S.C. 231. Double damages were requested pursuant to 31 U.S.C. Section 231.

8. Plaintiff's Motion for Summary Judgment in the civil action based on collateral estoppel was granted on all three claims.

Judgment was rendered against debtor in the amount of $139,788.16.

9. An involuntary petition in bankruptcy was filed in this court by certain of debtor's creditors on October 8, 1980. An Order for Relief pursuant to chapter 7 of the Bankruptcy Reform Act was entered on November 10, 1980.

10. This complaint to determine the nondischargeability of the judgment debt was commenced on July 10, 1981.

## ISSUE

The issue is whether collateral estoppel may be applied herein so as to find that the debt owed by debtor to Plaintiff is due to a willful and malicious injury and thus nondischargeable pursuant to 11 U.S.C. Section 523(a)(6).

## LAW

Plaintiff's Motion for Summary Judgment is based on the grounds of collateral estoppel. It is argued that those facts which necessarily had to be found by the jury in order to establish a criminal conviction, as well as those facts which had to be found to support civil liability, also establish that the debt is nondischargeable pursuant to 11 U.S.C. Section 523(a)(6).

Debtor argues first that collateral estoppel should not be applied as it was Congress' intent that the Bankruptcy Courts have exclusive jurisdiction over the issue of debt dischargeability. It is also argued that collateral estoppel does not apply as it was not found in the prior proceedings that debtor converted the funds with the actual intent to harm Plaintiff or its property. Debtor argues that 11 U.S.C. Section 523(a)(6) requires an actual intent to harm.

## A.

In *Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981), the Sixth Circuit Court of Appeals had before it a case dealing with the use of collateral estoppel in a dischargeability proceeding in the Bankruptcy Court. The Court therein recognized that, in granting jurisdiction to the Bankruptcy Court to make dischargeability determinations, it was Congress' intent that the Bankruptcy Court be the exclusive forum for such a decision. *Spilman v. Harley, supra*, at 226.

The Court nonetheless states that:

However, that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts. *Spilman v. Harley, supra*, at 227.

The application of collateral estoppel was stated to be logically consistent with the decision in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) and the exclusive jurisdiction of the Bankruptcy Court. It was therefore held that, where the requirements of the same were met, collateral estoppel was to preclude the relitigation of factual issues. *Spilman v. Harley, supra*, at 228.

■ The holding in *Spilman* conclusively answers the first of debtor's arguments. Collateral estoppel may be applied in a dischargeability proceeding. Such an application is not inconsistent with Congress' intent to grant exclusive jurisdiction over debt dischargeability to the Bankruptcy Courts.

■ Whether or not collateral estoppel may be applied in a particular case requires a Court to determine: "that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." *Spilman v. Harley, supra*, at 228; *In re Matter of Merrill*, 594 F.2d 1064 (5th Cir. 1979); *In the Matter of Ross*, 602 F.2d 604 (3d Cir. 1979). In order to make these determinations, the Bankruptcy Court must look to the entire record from the prior court proceeding. *Spilman v. Harley, supra*.

Debtor's first argument must be rejected. Where all requirements are met, collateral estoppel may be applied in a dischargeability proceeding in the Bankruptcy Court. In order to so apply it, a court must first look to the entire record from the prior proceeding. If then appropriate, it may be applied.

## B.

Debtor's second argument is to the effect that summary judgment should not be granted due to the fact that the prior proceedings did not establish the necessary element of "malice". Debtor defines this term to mean an actual intent to harm.

11 U.S.C. Section 523(a)(6) excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . ." [1] The term "willful" is defined in the Legislative History for the Bankruptcy Reform Act as meaning "deliberate or intentional". H.R.Rep.No.95–595, 95th Cong., 1st Sess. at 365 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Debtor has not attempted to argue that the element of "willfulness" was not established in the earlier proceedings.

There are two lines of cases which have arisen dealing with the meaning of the term, "malicious". Under the first view, a creditor must show that the debtor had the actual intent to harm the creditor or his property in order for the injury to have been malicious. *In Re Hawkins*, 6 B.R. 97, 6 B.C.D. 1054 (Bkrtcy.W.D.Ky.1980); *In Re Hinkle*, 9 B.R. 283, 7 B.C.D. 349 (Bkrtcy.D. Md.1981); *In Re Gumieny*, 8 B.R. 602 (Bkrtcy.E.D.Wis.1981). It is on this line of cases which debtor relies for his argument that collateral estoppel may not be applied herein. Debtor contends that neither of the two prior proceedings dealt with the issue of actual intent to harm the Plaintiff or its property.

Under the second line of cases, no actual intent to harm is necessary. Instead, the action must be wrongful, without just cause or excessive. 3 Collier on Bankruptcy, 15th Ed. ¶ 523.16[1] (1981). Personal hatred, spite or ill will towards the injured or his property is not required. Collier on Bankruptcy, *supra.*; *In Re McCloud*, 7 B.R. 819 (Bkrtcy.M.D.Tenn.1980); *In Re McGiboney*, 8 B.R. 987 (Bkrtcy.N.D.Ala.1981).

Debtor has made no argument that the prior proceedings did not establish the element of "malice" under the second definition. Accordingly, the Court finds that the injury to Plaintiff was malicious in the sense that the Debtor's acts were "wrongful, without just cause and excessive".

This Court does not need to determine in this case which view it will follow as to the meaning of malicious. The Court has reviewed the entire records from the prior proceedings. In so doing, it is this Court's determination that the findings necessary to the criminal conviction and civil judgment are the same as those necessary to a finding in a dischargeability proceeding that a debtor had the actual intent to harm a creditor or that creditor's property. Such a determination is, of course, necessary in order to apply collateral estoppel. *Spilman v. Harley, supra.*

Debtor was convicted of a violation of 18 U.S.C. Section 641, Embezzlement.[2] Following a jury trial on that charge and a separate charge brought under 18 U.S.C.

---

1. Where shown to be willful and malicious, the conversion of property is included within this section. *In Re Weiss*, Case No. 580–1837, Adv. No. 581-0425 (Bkrtcy.N.D.Ohio 1981); *In Re Hodges*, 4 B.R. 513, 6 B.C.D. 531 (Bkrtcy.W.D. Va.1980). Debtor has not disputed the fact that a willful and malicious conversion is intended to be covered by 11 U.S.C. Section 523(a)(6).

2. 18 U.S.C. Section 641 provides that:

"Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater."

Section 287,[3] the District Court fully instructed the jury as to the elements necessary to find debtor guilty of the charges.

In particular, and as to the former charge (18 U.S.C. Section 641), the judge instructed the jury that:

The statute under which the count of the indictment is drawn provides that whoever embezzles, steals, purloins or knowingly converts to his use or the use of another any record, voucher, money or thing of value of the United States or any department or agency of the United States shall be guilty of an offense against the laws of the United States.

Three essential elements, then, are required to be proved beyond a reasonable doubt in order to establish the offense charged in count 1 of the indictment: First, the act of embezzling, stealing, purloining or knowingly converting to his own use or the use of another any record, voucher, money or thing of value of the United States.

Second, the doing of such act willfully.

And, third, although it is not a contested issue in this case, that the value of the article or thing taken exceeds $100 . . .

The word "steal" as used in the statute and in the indictment means any dishonest transaction whereby one person obtains that which rightfully belongs to another and deprives that other of the rights and benefits of ownership. And the term is used, the term "steal" is used in a broad sense so as to include the obtaining of money to which a person is knowingly not entitled.

The word "purloin" is but an old-fashioned word for steal and means to wrongfully deprive the owner or the person entitled to that property of its property.

An act is done—and the word "embezzle" has been charged, and to embezzle means willfully to take or to convert to one's own use property of another which came into the wrongdoer's possession lawfully by virtue of that person's office or employment or position of trust.

An act is done willfully if it is done voluntarily and intentionally with a specific intent to do something the law forbids, that is, with a purpose to either disobey or disregard the law.

Knowingly also means voluntarily and intentionally but it means not because of mistake or accident or other innocent reason.

Additionally, in the civil action, the District Court found debtor to be liable to the government under 31 U.S.C. Section 231[4]. Such a holding necessitated that the Court find that the debtor had knowingly made a false, fictitious or fraudulent claim upon the Government. The Court in the civil action relied upon the earlier criminal conviction and the doctrine of collateral estoppel to support its holding of liability.

In the prior proceedings, it was thus found that debtor had the specific intent to violate the law by converting money belonging to Plaintiff. The conversion was made without just reason and by knowingly presenting a claim to the Government which claim was false, ficitious or fraudulent. This Court is of the opinion that such findings are the practical equivalent of a finding that the debtor actually intended to harm the Plaintiff or his property. No conclusion can flow from a wrongful and knowing conversion, done with the specific intent to violate the law, but that the person in question intended to harm the person whose goods he was converting.

---

3. Said charge was voluntarily dismissed by the United States of America after the jury indicated that it could not reach an agreement as to the guilt or innocence of the Debtor thereon.

4. 31 U.S.C. Section 231 provides, in part that: "Any person . . . who shall make or cause to be made, or present or cause to be presented, for payment or approval . . . any claim upon or against the government of the United States . . . knowing such claim to be false, fictitious, or fraudulent . . . and with intent to defraud the United States . . . shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained . . . together with the costs of suit."

As the various issues before this Court were twice previously litigated by and between the parties, said issues being necessary to a determination in those earlier cases, it is this Court's holding that collateral estoppel should be applied herein.

Collateral estoppel also applies to the defense raised by debtor that Plaintiff owes VITL monies under the contract. A counterclaim, raising this same issue, was filed by debtor against Plaintiff in the District Court civil action. The counterclaim was dismissed on the grounds that the party attempting to bring the counterclaim was not a party to the action. The issue has now been raised as a sort of defense and setoff.

Collateral estoppel may be applied equally as well to defenses as to the cause of action itself. *In Re Allen*, 3 B.R. 355 (Bkrtcy.W.D.N.Y.1980), citing 46 Am.Jur.2d *Judgments* Section 415 (1969). As the issue regarding whether Plaintiff owes VITL contract monies has already been necessarily and adversely decided against debtor, debtor may not now raise the issue.

As collateral estoppel applies herein, there is no genuine issue of material fact to be litigated between the parties. The debt in question is one arising from a willful and malicious injury to Plaintiff or his property.

Therefore, it is the conclusion of this Court that the debt owed by debtor, Calvin Cole, to Plaintiff, United States of America, in the sum of $141,788.16, plus interest, is nondischargeable in bankruptcy pursuant to 11 U.S.C. Section 523(a)(6).