In re Rudy Noel GATTE and Shelly Lafleur Gatte, Debtors.

Ricky Dane CLARK, Plaintiff,

v.

Rudy Noel GATTE, Defendant.

Bankruptcy No. 483–00065–LO.
Adv. No. 483–0037.

United States Bankruptcy Court,
W.D. Louisiana.

June 14, 1983.

Nick Pizzolatto, Jr., Lake Charles, La., for Ricky Dane Clark, plaintiff.

Russel K. Zaunbrecher, Crowley, La., for Rudy Noel Gatte, defendant and debtor.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

This cause was submitted to the court without hearing on May 27, 1983, on the plaintiff's Complaint to Determine Dischargeability of a Debt. The parties submitted briefs supplemented by documentary evidence and depositions.

The debt at issue in this matter arose from the alleged conversion on August 21, 1980, of Mr. Clark's property by Mr. Gatte. A summary of the events leading to this alleged act of conversion is necessary at this point.

Mr. Gatte was the owner of a tractor and trailer upon which Associates Commercial Corporation (hereinafter "Associates") held a mortgage. On March 14, 1980, Mr. Gatte and Mr. Clark entered into an agreement entitled "Buy and Sell Agreement and Power of Attorney". Pursuant to this agreement, Mr. Gatte agreed to sell, and Mr. Clark agreed to buy, the tractor and trailer. These items were identified in the agreement by serial numbers. The agreed purchase price was $46,157.39.

According to the agreement, the bill of sale and certificate of title were not to be passed until after Mr. Clark completed the monthly payments on Mr. Gatte's accounts at Associates. Additionally, the agreement provided that Mr. Clark was to have Mr. Gatte's power of attorney to exercise authority and control over the tractor and trailer. Mr. Clark was to maintain collision and liability insurance on the tractor and trailer. The agreement further provided that should Mr. Clark breach the agreement, he would return the property to Mr. Gatte. Although the agreement did not indicate that any sort of down payment was to be made, Mr. Clark gave Mr. Gatte $5,000.00 cash the day the agreement was signed.

Sometime later, Mr. Clark defaulted on his monthly payments. Associates informed Mr. Gatte that they were about to start repossession proceedings on the tractor and trailer. Mr. Gatte then contacted his attorney about cancelling the agreement and getting the Sheriff's Department to pick up the tractor and trailer. Mr. Gatte's attorney sent at least two letters to Mr. Clark notifying him of the default and seeking return of the tractor and trailer. Mr. Gatte understood his attorney to say that the contract was broken when Mr. Clark defaulted on payments, that this was a civil matter in which the Sheriff's Department would not get involved, and that Mr. Gatte himself should pick up the tractor and trailer.

On August 21, 1980, using the keys he had retained, Mr. Gatte went to Mr. Clark's residence while Mr. Clark was away, picked up the tractor and trailer, and took them to his house. After picking up the tractor and trailer, Mr. Gatte made some payments on his loans from Associates that were secured by the tractor and trailer. Eventually, however, Mr. Gatte defaulted on the monthly payments. Associates, through executory proceedings, had the tractor and trailer seized and sold at a sheriff's sale. Sometime after Mr. Gatte picked up the tractor and trailer but before the seizure and sale, Mr. Clark filed a petition for damages in state court against Mr. Gatte based on conversion. Mr. Gatte and his wife filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 24, 1983.

The complaint presently before the court alleges that Mr. Gatte is indebted to Mr. Clark for damages caused by Mr. Gatte's unlawful conversion of his tractor and trailer. The complaint further alleges that this

debt is nondischargeable in bankruptcy because it is a debt for willful and malicious injury.

■ The first question that must be answered is whether a conversion occurred. Louisiana Civil Code Article 2456 provides as follows:

The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.

Accordingly, a sale is complete upon the parties' agreement as to the item to be bought and sold and the price to be paid.

■ The common law conditional sales contract for movable property whereby the parties agree that the seller will retain title until the purchase price is paid in full is not recognized in Louisiana. *Roy O. Martin Lumber Co. v. Sinclair,* 220 La. 226, 56 So.2d 240 (1951). Consequently, the seller is divested of ownership as soon as the buyer becomes bound to pay the purchase price.

■ Since the agreement between Mr. Clark and Mr. Gatte specified both the items to be bought and sold and the price to be paid, the sale was complete on the date the agreement was signed. Considering that Mr. Gatte was divested of ownership of the tractor and trailer on March 14, 1980, his seizure of these items on August 21, 1980, constituted conversion. Conversion is a distinct act of dominion wrongfully exerted over another person's property in denial of or inconsistent with the owner's rights in the property. *Lincecum v. Smith,* 287 So.2d 625 (La.App. 3d Cir.1973), writ refused, 290 So.2d 904 (La.1974).

■ The next question to be answered is whether this act of conversion constitutes willful and malicious injury under Section 523(a)(6) of the Bankruptcy Code, thus rendering the debt nondischargeable. Section 523(a)(6) provides that a discharge does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity . . . ." Legislative history indicates that the phrase "willful and malicious injury" includes willful and malicious conversion. 124 Cong. Rec. H 11,095–6 (Sept. 28, 1978); S 17,412–13 (Oct. 6, 1978).

Section 523(a)(6) of the Bankruptcy Code has been interpreted as follows:

An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate or intentional", a deliberate or intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury. [Footnotes omitted.]

3 Collier on Bankruptcy ¶ 523.16[1] (15th ed.). The term "malicious" has been further defined to require *knowing* wrongfulness or *knowing* disregard of the rights of another. *Birmingham Trust National Bank v. McGiboney (In re McGiboney),* 8 B.R. 987, 989 (N.D.Ala.Bkrtcy.1981); *The Farmers Bank v. McCloud (In re McCloud),* 3 C.B. C.2d 701, 708–9, 7 B.R. 819, 825–26 (M.D. Tenn.Bkrtcy.1980), citing *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), *McIntyre v. Kavanaugh,* 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916), *Bennett v. W.T. Grant Co.,* 481 F.2d 664 (4th Cir.1973).

There is no doubt that Mr. Gatte's conversion of Mr. Clark's property was willful. He intentionally took the tractor and trailer from Mr. Clark. Furthermore, under Louisiana law, Mr. Gatte's conduct was wrongful. Thus, the issue is whether Mr. Gatte's actions were malicious, or knowingly wrongful and without just cause or excuse.

■ The burden of proof in this matter is on the plaintiff seeking to have the debt declared nondischargeable. *See Birmingham Trust National Bank v. McGiboney (In re McGiboney),* 8 B.R. at 990, citing Rule 407, Rules of Bankruptcy Procedure. This court finds that the plaintiff has failed to establish its allegation of malicious injury by Mr. Gatte.

It is clear from Mr. Gatte's deposition that he did not know that taking the tractor from Mr. Clark was wrong. Mr. Gatte believed he still owned this property and that Mr. Clark had an option to buy it. The written agreement prepared by an attorney and entered into by the parties indicates that Mr. Gatte still owned the property. Although such an agreement is not effective under Louisiana law, it is very easy to see how a layman could assume such a contract to be valid and binding according to its terms. Additionally, Mr. Gatte remained obligated to Associates after the agreement was entered into and took the tractor and trailer from Mr. Clark in an attempt to avoid repossession by Associates.

Mr. Gatte's actions constitute a technical conversion not subject to the exception from discharge. Technical conversions have been treated by the courts as follows:

> [A] claim founded on a mere technical conversion without conscious intent to violate the rights of another and under mistake or misapprehension, is dischargeable. 3 Collier on Bankruptcy, Para. 523.-16[3] (15th Ed., 1979), citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151 [79 L.Ed. 393] (1934). In *Davis,* Justice Cardozo, writing for the court, observed, " . . . a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice . . . [upon] an honest or mistaken belief". 239 U.S. at 331–332 [55 S.Ct. at 153].

*Liberty National Bank & Trust Co. v. Hawkins (In re Hawkins),* 6 B.C.D. 1054, 1055, 6 B.R. 97, 98–99 (W.D.Ky.Bkrtcy.1980).

Additionally, Mr. Gatte was acting on his attorney's advice or, at least, on what he understood to be his attorney's advice. Thus, it appears that Mr. Gatte was, in good faith, acting within what he perceived to be his legal rights. Such behavior can hardly be called "malicious".

Plaintiff's brief suggests that Mr. Gatte "became aware of the proper procedures after being served with the petition for damages filed against him by Mr. Clark". The brief further suggests that Mr. Gatte's continued refusal to return the tractor and trailer after this time evidences willful and malicious conduct. However, this court finds that, even after being served with the petition for damages, Mr. Gatte still could have believed he was on firm legal ground or, at least, that a valid legal dispute existed. The plaintiff has provided no evidence to the contrary to show that after being served with the petition for damages Mr. Gatte knew it was wrong for him to hold the tractor and trailer. Additionally, plaintiff's brief makes several other factual arguments that are simply not supported by the evidence.

In summary, although Mr. Gatte's conversion of Mr. Clark's property was intentional and wrongful, the mitigating circumstances of the conversion clearly show just cause and excuse for Mr. Gatte's conduct. This court is, thus, of the opinion that the debt did not arise from willful and malicious injury by the debtor. Accordingly, the debt based on conversion by Mr. Gatte of Mr. Clark's property is a dischargeable debt.