In re Carl A. **PALLO,** Debtor.

George **BARNES,** Plaintiff.

v.

Carl A. **PALLO,** Defendant.

Bankruptcy No. 3–84–01754.
Adv. No. 3–84–0141.

United States Bankruptcy Court,
W.D. Kentucky.

Aug. 29, 1986.

Helen Lucier, Daniel B. Boone, Louisville, Ky., for plaintiff Barnes.

Edward C. Airhart, Louisville, Ky., for defendant Pallo.

Glen L. Schilling, Louisville, Ky., Trustee.

## MEMORANDUM–OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before the court for a determination of the dischargeability of the debt due the creditor, George Barnes (Barnes), pursuant to 11 U.S.C. § 523(a)(2)(A), by the debtor, Carl A. Pallo (Pallo).

The relationship between the parties prior to the filing of this petition for Chapter 7 relief on August 22, 1984, may be summarized as follows. Pallo, as incorporator, and Barnes, as an early investor, were both stockholders in an entity known as Southern Star Climate Control Systems, Inc. (Southern Star). Pallo, as founder, attorney, and substantial shareholder, exercised considerable influence over the corporate activities and served as Vice-President thereof. Barnes purchased his original stock interest through Pallo in January, 1982. This stock was fully paid, the shares representing Barnes' investment were delivered, and these shares are not in issue here.

In early January, 1983, Pallo advised Barnes of the availability of additional shares and purportedly sold Barnes fifty (50) additional shares, then owned by Pallo, for the sum of $5,000.00. The total purchase price was paid to Pallo who delivered to Barnes a document titled Assignment of Interest and Agreement for Sale and Purchase of Stock, dated January 14, 1983. This document recited that Pallo " ... does hereby assign and sell to George R. or Celestine Barnes ... all of his rights to 50 shares of Southern Star Climate Control Systems Stock Certificate No. 2." No stock certificate evidencing Barnes' ownership was ever delivered as to this transaction, nor was this "sale" ever reflected in the corporation's Stock Record Book. Pallo's ownership of Southern Star at this time reflected 900 shares on the Stock Record Book.

It is uncontroverted that at all times the alienability of Southern Star shares was restricted, and so noted on each certificate,

by a right of first refusal wherein the written consent of the corporation and a majority in interest of the other shareholders was required, unless the shareholder desiring to make the transfer shall have first made an offer to sell to the corporation and the other shareholders in the manner described, and such offers shall not have been accepted.

Pallo acknowledges that the January 14, 1983 sale to Barnes did not comply with this requirement, and the document "Assignment of Interest" was designed to circumvent this procedure.

On or about December 13, 1982, Pallo executed documents which purportedly pledged his 900 shares of Southern Star as further collateral on a then-existing loan obligation due Citizens Fidelity Bank and Trust Co. (Citizens). A blank Irrevocable Stock or Bond Power was likewise executed by Pallo and delivered to Citizens. This stock, together with other assets previously pledged, served as collateral on a $33,000.00 obligation due the bank.

While Pallo does not recall delivery of the stock certificate to Citizens, he acknowledges that a stock certificate representing Barnes' ownership of fifty (50) additional shares has never been delivered, nor was this "sale" ever reported to the corporation. At no time was Barnes advised that the Pallo stock was encumbered or served as collateral for other obligations due Citizens. Citizens has no record of any request from Pallo to release sufficient shares to satisfy the Barnes sale and was first notified of Barnes interest therein on October 2, 1984 by Pallo's bankruptcy attorney, some forty (40) days after the petition for Chapter 7 relief.

Finally, Pallo asserts that the cumulative value of the collateral securing the $33,-000.00 debt was well in excess of that needed, and his close business relationship with the bank's former loan officer servicing his account would have assured release of sufficient shares to satisfy the Barnes sale.

At issue is whether the debt due Barnes and resulting from the stock transfer of January 13, 1983, is nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A) which reads as follows:

Section 523, Exceptions to discharge—

(a) A Discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

It is unquestioned that the party seeking to have its debt excepted from discharge pursuant to Section 523 bears the burden of proof by clear and convincing evidence. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *In re Martin*, 761 F.2d 1163 (6th Cir.1985); *In re Carr*, 49 B.R. 208 (Bkrtcy.W.D.Ky.1985); *In re Baiata*, 12 B.R. 813 (Bkrtcy.E.D.N.Y. 1981); and *In re Maiolo*, 12 B.R. 114 (Bkrtcy., N.D.Ga.1981). Case law evolving from decisions rendered pursuant to 11 U.S.C. Section 523(a)(2)(A) establish that a debt is nondischargeable if the creditor can prove: (1) debtor knowingly made false representations; (2) debtor made misrepresentations with intent to deceive the creditor; (3) creditor relied on the misrepresentations; (4) creditor's reliance was reasonable; and (5) that said reliance was the proximate cause of creditor's loss. *In re Wahl*, 28 B.R. 688 (Bkrtcy.W.D.Ky.1984); *Matter of Hagedorn*, 25 B.R. 666 (S.D.Ohio 1982); *In re Garman*, 643 F.2d 1252 (7th Cir.1980); *In re Taylor*, 514 F.2d 1370 (9th Cir.1974).

This construction of the Section 523 discharge provision, with the five elements to be proved by clear and convincing evidence, provides a debtor the fresh start protection afforded by the Bankruptcy Code. *In re Johnson*, 18 B.R. 555 (S.D.Md.1982); *In re Carothers*, 22 B.R. 114 (D.Minn.1983); *In re DeRosa*, 20 B.R. 307 (S.D.N.Y.1982); and *In re Vissers*, 21 B.R. 638 (E.D.Wisc. 1982).

■ Applying these elements to the present case, it is clear that Barnes did rely on Pallo's representations concerning the sale of the stock in question, that such reliance was reasonable, and further was the proximate cause of his loss. Of more searching inquiry is whether the false representations were knowingly made and were made with the intent to deceive. This examination focuses on the circumstances surrounding the sale date, January 13, 1983. As noted in *In re Hunter,* 780 F.2d 1577 (11th Cir.1986), there must be an actual overt false pretense or representation to come within the exception to discharge for false representation. Additionally, a false representation upon which a claim of non-dischargeability may be based generally must relate to an existing fact and must be made recklessly and totally without any rational basis. *In re Fordyce,* 56 B.R. 102 (Bkrtcy., M.D.Fla.1985). As stated in *In re Firestone,* 26 B.R. 706 (Bkrtcy.S.D.Fla. 1982) "Declarations of predictions or opinions as to future events which the declarant does not, in fact, hold or declarations made with reckless indifference for the truth may be found to be fraudulent."

■ The court finds that on January 13, 1983, Pallo represented to Barnes that he was the owner of the shares then available for sale with the present ability to convey same upon payment of the agreed upon price. Yet, Pallo was well aware that this sale was improper in view of the stock transfer restrictions, and further was totally dependent upon release by Citizens of sufficient shares to consummate the sale to Barnes. Subsequent inquiries from Barnes as to when the stock would be delivered produced only a tangled web of excuses. The records of Citizens failed to disclose any knowledge of the Barnes transaction or a request to release sufficient collateral to satisfy the Barnes sale. The knowledge that this stock was not readily available was within the sole province of Pallo, and was neither expressly nor impliedly brought to Barnes' attention prior to acceptance of payment in full therefor. Nor was this a contingent or qualified transfer. At no time did Pallo state to Barnes the true condition of his stock ownership. The subsequent efforts to dissuade Barnes from direct contact with the corporate officers as to the stock, and the surreptitious transfer of these very shares to Brinly-Hardy in February, 1984, without reflecting Barnes' ownership, displays a cavalier disregard for Barnes' rights. While Pallo may have fully intended to deliver the stock covered by the January, 1983 sale to Barnes, and for reasons beyond his control may have been precluded therefrom, such assurances of future performance were not what Barnes bargained for, nor what Pallo then promised to sell. Simply stated, Barnes agreed to buy and Pallo agreed to sell the stock in question. Barnes performed; Pallo did not. The circumstances then existing were within the sole knowledge of Pallo and he was under a duty to disclose the true nature of the then competing claims or encumbrances of that property he was purporting to sell Barnes. This reckless disregard for the truth is largely explained by subsequent and unsuccessful attempts to belatedly secure the release of Barnes' "stock". Indeed, the efforts to exercise ownership rights over this property subsequent to his bankruptcy petition portrays his feeble attempts to rectify the Barnes claim.

It is the opinion of the court and it does specifically find, that all the requisite elements mandating the debt of Barnes to be nondischargeable have been proven by clear and convincing evidence. Accordingly, the plaintiff-creditor having carried its requisite burden of proof under 11 U.S.C. § 523(a)(2)(A), the debt be and is adjudged nondischargeable.

Finally, relief has been requested by plaintiff's attorney in the form of a request for attorney's fees in the prosecution of this action. There has been no proof offered as to the entitlement to said fees, and accordingly said request is denied.

The above constitutes Findings of Fact and Conclusions of Law pursuant to Rules of Bankruptcy Procedure 7052. A separate

Order consistent herewith will be entered
this date.