In re Michael D. LINDSLEY, Laury Lindsley, Debtors.

UNITED STATES of America, Plaintiff,

v.

Michael D. LINDSLEY, Laury Lindsley, Defendants.

Bankruptcy No. 83 00462.
Adv. No. 83 0128.

United States Bankruptcy Court,
N.D. New York.

March 16, 1984.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for plaintiff; Gustave J. DiBianco, Asst. U.S. Atty., of counsel.

Smith & Clark, P.C., Fulton, N.Y., for defendants; Jerome A. Mirabito, of counsel.

MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

LEON J. MARKETOS, Bankruptcy Judge.

The above captioned adversary proceeding comes before the Court pursuant to a complaint filed by the United States of America (hereinafter, the Plaintiff) requesting the Court to determine a debt owed to the Plaintiff by Michael D. and Laury Lindsley (hereinafter, the Debtors) nondischargeable pursuant to § 523(a)(6) of 11 U.S.C. (hereinafter, the Code).

The Debtors did not appear at the trial held on December 14, 1983, although Counsel appeared in their behalf. There was no testimony of the Debtors heard at trial; however, certain statements made by Debtors at an examination before trial (hereinafter, E.B.T.) held on October 4, 1983, were admitted as evidence.

Upon the pleadings, testimony and documentary evidence produced at the trial, and post-trial memorandum submitted by each party, the Court determines the Plaintiff has sustained its burden of proof as to the alleged exception to discharge. Consequently, based on the following, the debt owed by the Debtors to the Plaintiff is nondischargeable.

## FINDINGS OF FACT

1. On April 21, 1983, the Debtors, dairy farmers, filed a voluntary joint petition for liquidation pursuant to Chapter 7 of the Code. Debtors listed Plaintiff as a secured creditor on their schedules, however, they noted thereon that Plaintiff repossessed its security. Thereafter, the Plaintiff commenced this adversary proceeding seeking to except its debt from discharge, pursuant to Code § 523(a)(6), alleging the Debtors committed a willful and malicious conversion of Plaintiff's security.

2. Plaintiff extended numerous loans to the Debtors during the years 1973 through 1981. Relevant to this proceeding, between July 6, 1978 and June 30, 1980, the Plaintiff extended three separate loans to the Debtors totaling approximately $85,-000.00. The Debtors executed two security agreements dated July 6, 1978 and April 29, 1981, whereby the Debtors gave the Plaintiff, as security for the three loans, a lien on all livestock[1] then owned or thereafter acquired. In addition, the Debtors signed and executed, and Plaintiff filed, a U.C.C.–1 Financing Statement in this regard. The terms of the Security Agreements provided that the livestock was not to be sold without first notifying and obtaining the consent of the Plaintiff.

3. Between December 1982 and early March of 1983, the Debtors sold substantially all their livestock for dairy purposes,[2] without first notifying the Plaintiff or obtaining its consent. The Debtors sold the cattle at numerous auction barns throughout northern New York, and used the names of relatives and their infant children as the vendors of the herd. Moreover, the Debtors requested checks received in payment for the livestock to be issued in the names of their relatives or children as payees.

4. At an E.B.T. held on October 4, 1983, in response to the Plaintiff's request for information regarding the location of the livestock, the Debtors stated that most of the livestock had died and that whatever livestock survived was sold for beef purposes only. The Debtors abandoned their farm in March 1983. The Plaintiff has received no proceeds from the sale of the Debtors' livestock.

5. The Debtors admitted in the E.B.T. held on October 4, 1983, that they were aware the livestock was encumbered by the Plaintiff's lien, but that they sold the livestock anyway. The Debtors stated that the cows were sold to obtain funds to maintain their farm and family.

6. Although the livestock sold by the Debtors continued to be impressed by the Plaintiff's security interest, the Debtors intentionally attempted to conceal their disposition of the cattle from the Plaintiff and knowingly disregarded the fact that the sale would deprive the Plaintiff of its security.

---

1. The security agreements granted additional security to the Plaintiff in the nature of farm equipment and machinery. However, the parties have agreed the instant proceeding relates only to the livestock.

2. The evidence established it is totally inconsistent with ordinary dairy operations for a farmer to sell all his presently producing milk cows for dairy purposes. However, it is within the ordinary course of a dairy farmer's business to sell old unproductive milk cows for beef. The sale of the former brings in substantially greater revenue. The dairy cows in the instant case were sold for approximately $550.00 per head, while the average price for the sale of beef cows ranges between approximately $100.00 to $200.00 per head.

## DISCUSSION

Plaintiff has the burden of proving each element essential to its nondischargeability claim by clear and convincing evidence. *In re Magnusson,* 14 B.R. 662, 667 (Bankr.N.D.N.Y.1981); *In re Rodriguez,* 29 B.R. 537, 539 (Bankr.N.D.N.Y. 1983). Therefore, for the Plaintiff to prevail on the instant adversary, it must demonstrate the required elements of proof in regard to Code § 523(a)(6) by clear and convincing evidence.

Section 523(a)(6) excepts from discharge a debt:

> "for willful and malicious injury by the debtor to another entity or to the property of another entity; ..."

The phrase "willful and malicious injury" includes wrongful conversions of property subject to a security interest. *In re McCloud,* 7 B.R. 819, 822 (Bankr.M.D. Tenn.1980); *In re DeRosa,* 20 B.R. 307, 312 (Bankr.S.D.N.Y.1982).

The conversion must be both willful and malicious. The term "willful" means deliberate or intentional. *In re Pommerer,* 10 B.R. 935, 940 (Bankr.D. Minn.1981). The term "malicious" means a wrongful act done consciously and knowingly in the absence of just cause or excuse. *In re DeRosa, supra* at 313.

Although this Court can understand Debtors' explanation of why the cows were sold, and can appreciate the financial bind which the Debtors were in, the decision to sell the livestock was not solely the Debtors' to make. The Debtors' decision to sell the livestock constitutes a deliberate and intentional conversion of the Plaintiff's security received from the Debtors for the loans.

It is the Court's determination, therefore, that as the Debtors' conversion of Plaintiff's security was both willful and malicious in nature, the debt herein at issue comes within the exception provided by Code § 523(a)(6) and, accordingly, the debt is nondischargeable.

Based on the foregoing, the debt owed by the Debtors to the Plaintiff be and the same is hereby determined to be nondischargeable.

IT IS SO ORDERED.